**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **Mario Walker & Sandra Goins,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No.: GLS-21-2100 |
| | ) | |
| **Civility Management Solutions, LLC, *et al.*,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the Court is "Plaintiffs' Motion for Partial Summary Judgment" and memorandum in support thereto (ECF Nos. 65, 65-1) (collectively "the Motion"), filed by Plaintiffs Mario Walker ("Plaintiff Walker") and Susan Goins ("Plaintiff Goins"). Defendants Civility Management Solutions, LLC and Laurie Sayles (collectively "the Defendants") filed their opposition related thereto ("Opposition"), and Plaintiffs filed a Reply. (ECF Nos. 66, 70). The matter is fully briefed, accordingly no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **DENIED**.

## I.   BACKGROUND

### A.  Procedural Background[1]

Plaintiff Walker filed suit ("*Walker* case") against the Defendants asserting the following causes of action: Count I, violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, overtime wage violation; Count II, violation of the FLSA, minimum wage violation; Count III, violation of Md. Code Ann. Lab. & Empl. § 3-401 ("MWHL"), overtime wage violations; Count IV, violation of the MWHL, minimum wage violations; Count V, violation of the Maryland

---

[1] The extensive procedural history in this case is set forth in the Court's prior memorandum opinion. *See* ECF No. 62.

Wage Payment and Collection Law, Md. Code Ann. Lab. & Empl. § 3-501 ("MWPCL"), failure to pay wages due; Count VI, breach of contract; and Count VII, unjust enrichment.  (*Walker* Case, ECF No. 1).  Plaintiff Goins filed a complaint (the "*Goins* case") against the Defendants asserting the following causes of action: Count I, violation of the FLSA, minimum wage violation; Count II, violation of the MWHL, minimum wage violations; and Count III, violation of the MWPCL, failure to pay wages due.  (*Goins* Case, ECF No. 1).[2]

After Plaintiffs Walker and Goins (collectively "the Plaintiffs") filed a notice of intent to file motions for summary judgment, the Court issued a memorandum opinion and order granting the Plaintiffs' request.  (ECF Nos. 60, 62).

### B.  Factual Background[3]

#### 1.  *Evidence Relevant to both Plaintiffs*

##### a.  Undisputed Facts

Defendant Sayles is the sole owner and chief executive officer ("CEO") of Civility MS, a professional consulting company that provides services primarily to the federal government.  (Defendant Sayles Dep., 6:20-7:21, J.A. 000003).  As the CEO, Defendant Sayles had the authority to hire and fire employees.  (Defendant Sayles Dep., 25:8-11, J.A. 000007).  Defendant Sayles also had the authority to determine employee's pay.  (Defendant Sayles Dep., 46:16-21, J.A. 000013; Ellis Affidavit ¶ 2, J.A. 000233).  During the relevant time period, Dawn Ellis managed Civility MS's payroll as the Finance Manager/Administrator and

---

[2] Subsequently, the Court consolidated the *Walker* and *Goins* cases. (ECF No. 59).
[3] The Court views all evidence in the light most favorable to the Defendants, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). In addition, the parties submitted a Joint Appendix. (ECF No. 72) ("J.A."). Plaintiffs' submissions can be found in this range: Bates Nos. 000001-000240 and 000272-73. Defendants' submissions can be found in this range: Bates Nos. 000241-000269. The Court will refer to the documents as, e.g., J.A. 000001.

Accounts Receivables Administrator. (Ellis Affidavit, ¶ 1, J.A. 000233; Defendant Sayles Dep., 24:21-25:1, J.A. 000007).

On or around September 30, 2018, Defendant Sayles informed Civility MS employees that she could no longer afford to pay their salaries. (Plaintiff Walker Dep., 39:4-40:15, J.A. 000091-92; Defendant Sayles Dep., 21:9-24:11, J.A. 000006-07; Ellis Affidavit, ¶ 3, J.A. 000233). From October 1, 2018 to February 28, 2019, Plaintiffs maintained their access to Civility MS's office. (Defendant Sayles Dep., 26:1-27:5, J.A. 000008).

Defendants did not maintain accurate employee records, including offer letters and the specific hours that Plaintiffs worked. (Defendant Sayles Dep., 9:13-19:1, J.A. 000003-06; Defendant Sayles Dep., 16:17-18:18, J.A. 000245-46).

     b.  <u>Material Fact in Dispute: Employees or Laid Off?</u>

The parties dispute Plaintiffs' employment status from October 1, 2018 to February 28, 2019. Per Plaintiffs, they were not laid off and continued to work full-time without pay, with no changes to their daily job responsibilities. (Plaintiff Walker Dep., 109:17-110:5, J.A. 000161-62; Plaintiff Goins's Ans. to Interrog., at No. 10, J.A. 000211; Ellis Affidavit, ¶ 3, J.A. 000233). According to Defendants, Plaintiffs were laid off on September 30, 2018 and were rehired on March 1, 2019, at which time they received new offer letters. (Defendant Sayles Dep., 24:4-29:7, J.A. 000007-08; Defendant Sayles Dep., 66:9-67:7, J.A. 000018).

     2.  *Plaintiff Walker*

     a.  <u>Undisputed Facts</u>

On or about July 25, 2017, Plaintiff Walker was hired as a financial manager at Civility Management Solutions, LLC ("Civility MS"). (Deposition of Plaintiff Walker, "Plaintiff Walker Dep.," 28:1-9, J.A. 000080). Plaintiff Walker's offer letter promised that he would receive a salary

of $100,000 per year for his first three months of employment, and $110,000 per year thereafter. (Plaintiff Walker Dep., 49:18-22, J.A. 000101).

Defendants do not possess any of Plaintiff Walker's offer and termination letters, as his employee file was deleted from Civility MS's online recordkeeping system. (Deposition of Defendant Sayles, "Defendant Sayles Dep.," 9:13-19:1, J.A. 000003-06; Plaintiff Walker Dep., 92:20-95:19, J.A. 000145-147).

On or around July 16, 2018, Plaintiff Walker became a corporate program manager/business developer after his assignment on the Department of Homeland Security ("DHS") project ended. (Plaintiff Walker Dep., 28:10-18, J.A. 000080; Plaintiff Walker Dep., 35:9-16, J.A. 0000087; Plaintiff Walker Dep., 52:2-7, J.A. 0000104; Defendant Sayles Dep., 72:9-14, J.A. 000019). As a corporate program manager, Plaintiff Walker reported directly to Defendant Laurie Sayles ("Defendant Sayles"), sent offer letters to employees, and managed Civility MS contracts as well as employees' and customers' expectations. (Plaintiff Walker Dep., 54:5-17, J.A. 0000104-06; Plaintiff Walker Dep., 87:5-13, J.A. 0000139; Defendant Sayles Dep., 48:18-20, J.A. 0000013).

During Plaintiff Walker's employment, Defendant Sayles approved the purchase of a cot so that Plaintiff Walker could have a place to sleep at the Civility MS office. (Defendant Sayles Dep., 53:2-54:3, J.A. 000014-15). In addition, Plaintiff Walker made personal charges on Civility MS's company credit card, which were later deducted from his paychecks. (Plaintiff Walker Dep., 83:13-84:9, J.A. 000135-36). It is unclear from the record as to when these facts occurred.

Plaintiff Walker was paid a salary in accordance with his offer letter from July 25, 2017 to May 30, 2018, and January 1, 2020 to June 30, 2020. (Plaintiff Walker Dep., 28:1-9, J.A. 000080; Affidavit of Plaintiff Walker, "Plaintiff Walker Affidavit," ¶ 3, J.A. 000214). However, Plaintiff

was not paid a salary and received no pay from June 1, 2018 to June 15, 2018 and from October 1, 2018 to February 28, 2019.  (Civility Management Solutions Payroll Details Report, "Plaintiff Walker's Payroll Report," J.A. 000227).  In addition, from July 16, 2018 to July 31, 2018 and March 1, 2019 to December 31, 2019, Plaintiff Walker was paid a salary less than $110,000. (Plaintiff Walker's Payroll Report, J.A. 000226). Finally, Plaintiff Walker received various payment amounts, ranging from $0 to $4,833.61 from June 1, 2018 to September 30, 2018 and December 31, 2019.  *See generally* Plaintiff Walker's Payroll Report, J.A. 000220-227.

Specifically, related to Plaintiff Walker's payments:

| Date Range | Amount of payments received | Evidence |
|---|---|---|
| June 1, 2018 to June 15, 2018 | No pay | (Plaintiff Walker's Payroll Report, J.A. 000227; Plaintiff Walker Dep., 32:17-33:4, J.A. 000084-85) |
| July 16, 2018 to July 31, 2018 | $3,490.08 | (Plaintiff Walker's Payroll Report, J.A. 000226) |
| August 1, 2018 to August 15, 2018 | $4,833.61, which included a $4,272.67 bonus payment | (Plaintiff Walker's Payroll Report, J.A. 000226) |
| August 16, 2018 to September 30, 2018 | Approximately $1,042.00 | (Plaintiff Walker's Payroll Report, J.A. 000225) |
| October 1, 2018 to February 28, 2019 | No pay | (Plaintiff Walker Dep., 46:12-15, J.A. 000098; Plaintiff Walker Affidavit, ¶ 3, J.A. 000214; Defendant Sayles Dep., 26:3-6, J.A. 000008) |
| March 1, 2019 to December 31, 2019 | Various amounts that ranged from $1,528.85 to $3,346.87 | (Plaintiff Walker's Payroll Report, J.A. 000220-24). |

In sum, Plaintiff Walker is seeking unpaid regular wages and overtime wages for the periods of June 1, 2018 to December 31, 2019.  In particular, he is claiming unpaid wages and/or overtime for the periods of June 1, 2018 - August 15, 2018, August 16, 2018 - September 30, 2018, October 1, 2018 - February 28, 2019, and March 1, 2019 - December 31, 2019.

      b.  <u>Disputed Facts</u>

According to Plaintiff Walker, he never received a new offer letter indicating that his pay would be reduced upon his promotion to corporate program manager/business developer. (Plaintiff Walker Dep., 32:17-33:4, J.A. 000084-85; Plaintiff Walker Dep., 50:13-51:1, J.A. 000102-03; Plaintiff Walker Affidavit, ¶ 3, J.A. 000214).  Defendants counter that when Plaintiff was hired as a corporate program manager on or around July 16, 2018, he received a new offer letter with a reduced salary.  (Plaintiff Walker Dep., 37:4-15, J.A. 000089; Defendant Sayles Dep. 11:21-12:9, J.A. 000004; Plaintiff Walker's Payroll Report, J.A. 000225-227). On this issue, Defendant Sayles did not maintain any of Plaintiff Walker's offer letters, and therefore does not know what his reduced salary was.  (Defendant Sayles Dep., 27:6-31:11, J.A. 000008-9; Defendant Sayles Dep. 48:7-17, J.A. 000013).

Second, Plaintiff Walker was never laid off by Defendants effective September 30, 2018. Thus, between October 1, 2018 to February 28, 2019, Plaintiff Walker continued to work as an employee of Civility MS without any change in his responsibilities.  (Plaintiff Walker Dep., 53:2-54:4, J.A. 000105-06; Plaintiff Walker Dep., 109:17-110:18, J.A. 000161-62; (Affidavit of Dawn Ellis, "Ellis Affidavit," ¶ 3, J.A. 000233).  Indeed, from June 1, 2018 to February 28, 2019, Plaintiff Walker continued to work his typical fifty (50) hours per week.  (Plaintiff Walker Dep., 53:17-54:4, J.A. 000105-06; Plaintiff Walker Affidavit, ¶ 4, J.A. 000214).  Plaintiff never received any documentation notifying him that he would be laid off.  (Plaintiff Walker Dep., 39:4-14, J.A. 000091).  Rather, in or about August 2021, Defendant Sayles instructed Civility MS employee, Dawn Ellis to draft a termination letter for Plaintiff Walker in which it was represented that his termination was effective September 30, 2018.  (Ellis Affidavit, ¶ 5, J.A. 000233; Defendant Sayles Dep., 29:8-31:1, J.A. 000008-9).  Defendants counter that Defendant Sayles informed

Plaintiff Walker that he was laid off on September 30, 2018, and later rehired him on March 1, 2019. (Defendant Sayles Dep., 20:1-29:7, J.A. 000006-8; Civility Management Solutions Notice of Layoff Letter, "Plaintiff Walker Termination Letter," J.A. 000234). To that end, on September 30, 2018, Plaintiff Walker signed a termination letter drafted by Ms. Ellis. (Defendant Sayles Dep., 28:10-29:7, J.A. 000008). Thus, from October 1, 2018 to February 28, 2019, Plaintiff Walker "volunteered his services" to Civility MS; i.e., Defendants did not require him to perform any work during this period. (Defendant Sayles Dep. 36:19-40:7, J.A. 000010-11). Plaintiff Walker also did "personal things…. on his phone and stuff like that" at the Civility MS office from October 1, 2018 to February 28, 2019. (Defendant Sayles Dep., 49:4-53:1, J.A. 000013-14).

Third, Plaintiff Walker's job responsibilities as corporate program manager did not involve managing or supervising Civility MS employees from July 16, 2018 until his termination on March 1, 2021. (Plaintiff Walker Dep., 87:5-16, J.A. 000139). Defendants counters that Plaintiff Walker's job responsibilities involved managing and supervising Civility MS employees from July 16, 2018 until his termination on March 1, 2021. (Defendant Sayles Dep., 12:12-20, J.A. 000004; Plaintiff Walker Dep., 54:5-14, J.A. 000106).

Fourth, according to Plaintiff Walker, there is one other material fact in dispute: that he was not paid on a salaried basis from June 1, 2018 to December 31, 2019. (Plaintiff Walker's Payroll Report, J.A. 000225).

### 3. *Plaintiff Goins*

#### a. Undisputed Facts

In or around 2018, Plaintiff Goins was hired at Civility MS as a receptionist. (Plaintiff Goins's Answers to Civility Management Solutions, LLC's First Set of Interrogatories, "Plaintiff Goins's Ans. to Interrog.," at No. 9, J.A. 000210; Defendant Sayles Dep., 24:21-25:1, J.A.

000007).  At the time of her hiring, Plaintiff Goins worked forty (40) hours per week and received a salary of $30,000 per year.  (Plaintiff Goins's Ans. to Interrog., at No. 9, J.A. 000210; Defendant Civility MS's Answers to Plaintiff Goins's First Set of Interrogatories, "Defendant Civility MS's Ans. to Interrog.," at No. 7, J.A. 000259).  On or around July 2, 2018, Plaintiff Goins's hours were reduced to thirty-two (32) hours per week.  (Defendant Civility MS's Ans. to Interrog., at No. 7, J.A. 000259; Plaintiff Goins's Ans. to Interrog., at No. 11, J.A. 000211).

On or about September 30, 2018, Defendant Sayles informed Plaintiff Goins that she could no longer afford to pay her salary.  (Plaintiff Goins's Ans. to Interrog., at No. 4, J.A. 000208; Defendant Sayles Dep., 21:9-21, J.A. 000006). Plaintiff Goins subsequently applied for and received unemployment benefits from approximately October 7, 2018 until March 18, 2019. (Defendant Sayles Dep., 25:8-18, J.A. 000007; Civility Management Solutions Unemployment Insurance Report, "Plaintiff Goins's Unemployment Payments," J.A. 000252-54).

From October 1, 2018 to February 28, 2019, Plaintiff Goins came into the Civility MS office.  (Plaintiff Goins's Ans. to Interrog., at No. 9, J.A. 000210; Defendant Sayles Dep., 64:7-65:15, J.A. 000017).  During that period of time, Defendant Sayles made no effort to keep track of the hours that Plaintiff Goins was at the office. (Defendant Sayles Dep., 12:6-16:13, J.A. 000244-45).

    b.  Disputed Facts

 Per Plaintiff Goins, she was not laid off on September 30, 2018, but rather continued to work when she was in the office from October 1, 2018 to February 28, 2019.  (Plaintiff Goins Ans. to Interrog., at No. 11, J.A. 000211; Ellis Affidavit, ¶¶ 3-5, J.A. 000233). According to Defendants, Plaintiff Goins was laid off on September 30, 2018 and received a termination letter that same day. (Defendant Sayles Dep., 20:1-21:14, J.A. 000006; Defendant Sayles Dep., 9:7-9, J.A. 000243).

Relatedly, per Defendant Sayles, when Plaintiff Goins was at the office between October 1, 2018 to February 28, 2019, she did not perform any work. Instead, "she wasn't doing nothing. She was just hanging out. She was visiting." (Defendant Sayles Dep., 16:17-18:18, J.A. 000245-46).

According to Defendants, there is one other material fact in dispute. On July 2, 2018, Plaintiff Goins' pay decreased to $11.50 per hour.  (Defendant Civility MS's Ans. to Interrog., at No. 7, J.A. 000259).

## II.   STANDARD OF REVIEW

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted).  The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

To defeat motions for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question").

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A "mere scintilla" of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.  General Summary of Parties' Arguments

This section contains a general summary of the parties' arguments. Particularization of the parties' arguments occurs below.

#### 1.  *Plaintiff Walker*

Plaintiff Walker argues that he is entitled to summary judgment, as a matter of law, because: (1) he would be prejudiced if Defendants were permitted to rely upon an FLSA overtime exemption as an affirmative defense, which was raised for the first time in their Opposition; and (2) he is entitled to unpaid wages and overtime wages under the FLSA, MWHL, and MWCPL because he routinely worked fifty hours per week from June 1, 2018 to December 31, 2019. (Motion, pp. 8, 9, 12-14).

Alternatively, if the Court finds that Defendants may raise an FLSA exemption, Plaintiff Walker argues that he does not qualify as an executive or administrative under the FLSA because Defendants failed to pay him on a salaried basis. (*Id.*, pp. 10-12).

In response, Defendants argue that summary judgment is inappropriate for several reasons. First, Plaintiff Walker cannot show unfair prejudice because Defendants raised the FLSA

executive and administrative exemptions as affirmative defenses during discovery when they served their interrogatory responses upon Plaintiff. Second, Plaintiff Walker is exempt from overtime wages under the FLSA because his primary duties were both executive and administrative in nature. Third, Plaintiff Walker's varying salaries reflect his reduced salaries, bonus payments, and deductions for personal expenses. Fourth, Plaintiff Walker is not entitled to any wages from October 1, 2018 to February 28, 2019 because he was laid off. Fifth, any claim for unpaid regular and/or overtime wages that accrued before August 18, 2018 is barred by the statute of limitations applicable to FLSA, MWHL, and MWPCL actions. (Opposition, pp. 8-14). In the Reply, Plaintiff Walker failed to address Defendants' argument as it relates to the statute of limitations. *See generally* Reply, pp. 1-15.

### 2. *Plaintiff Goins*

Plaintiff Goins argues that she is entitled to summary judgment because Defendants failed to pay her any wages from October 1, 2018 and February 28, 2019, even though she continued to work full-time. (Motion, pp. 15-18). Defendants counter that Plaintiff Goins is not entitled to summary judgment. First, Plaintiff Goins was laid off from October 1, 2018 and February 28, 2019, and she is not entitled to any wages for her work. Relatedly, even though she went into the office during this time, she did not perform any work for which she is entitled to compensation. Alternatively, because Plaintiff Goins received $6,732.00 in unemployment benefits after she was laid off on September 30, 2018, she cannot receive double recovery from Defendants for unpaid wages for the same time period. (Opposition, pp. 13-18). Plaintiff Goins argues that she is entitled to unpaid wages, despite receiving unemployment benefits, because she continued to work for Defendants without pay. (Reply, pp. 9, 10).

### 3. *Arguments Common to Both Plaintiffs*

Both Plaintiffs assert that Defendants are jointly and severally liable as their employers for unpaid wages and liquidated damages. Defendants contend that there is a genuine issue of material fact as to whether an employer-employee relationship existed between Plaintiffs and the Defendants between October 1, 2018 and February 28, 2019, which must be resolved first.

### B. **Plaintiff Walker's Claims**

#### 1. *Consideration of Affirmative Defenses*

Fed. R. Civ. P. ("Rule") 8(c) requires that "a party must affirmatively state any avoidance or affirmative defense" in a responsive pleading. Fed. R. Civ. P. 8(c); *Bryant Real Estate, Inc. v. Toll Bros., Inc.*, 106 F. App'x. 182, 185 (4th Cir. 2004). [T]he purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Grunley Walsh U.S., LLC v. Raap*, 386 F. App'x. 455, 459 (4th Cir. 2010) (internal quotation marks and citations omitted); *see also Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 267 (D. Md. 2023). It is settled that a failure to raise an affirmative defense in the appropriate pleading results in the loss of that defense. *RCSH Operations, L.L.C. v. Third Crystal Park Associates L.P.*, 115 F. App'x. 621, 629 (4th Cir. 2004); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653-54 (4th Cir. 2006) ("Where a defendant has failed to raise a statute of limitations defense by way of its answer, the defense is usually waived").

However, even if a party fails to plead an affirmative defense in its responsive pleading, the defense is not waived absent prejudice or unfair surprise to the opposing party. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *overruled on other grounds*, Desert *Palace v. Costa*, 539 U.S. 90 (2003) ("there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not

waived when it is first raised in a pre-trial dispositive motion"); *see also RCSH Operations, L.L.C.*, 115 F. App'x. at 629.

Plaintiff Walker argues that he will be prejudiced if the Court allows Defendants to raise the executive and administrative FLSA exemptions as affirmative defenses for the first time in the Opposition. Alternatively, if the Court allows Defendants to raise the executive and administrative FLSA exemptions as affirmative defenses, Plaintiff Walker argues that such exemptions do not bar recovery of overtime wages for the following reasons: (1) he was not paid on a salaried basis from August 16, 2018 to February 28, 2019; and (2) he was paid below his promised salary from March 1, 2019 to December 31, 2019.

Defendants counter that they raised FLSA exemptions in Defendant Civility MS's Answers to Interrogatory Nos. 10, 12 and Supplemental Answers to Interrogatory No. 6, such that Plaintiff would not be prejudiced. To advance their argument that they did not waive their right to assert an affirmative defense, Defendants rely on *Bryant Real Estate, Inc., supra.*, 106 F. App'x at 186-87.

In this case, Defendant's Answer lists only the following affirmative defenses: (1) accord and satisfaction; (2) estoppel; (3) failure of consideration; (4) fraud; (5) illegality; (6) laches; (7) payment; (8) release; (9) statute of frauds; (10) statute of limitations; and (11) waiver. *See* ECF No. 14. Thus, the Court finds that Defendants failed to adequately plead a FLSA exemption in their Answer. *See Morrissey v. CES Computer Enhancement Sys., Inc.*, Civ. No. SAG-21-899, 2023 WL 2432838, at *3 (D. Md. Mar. 9, 2023) (finding defendants' answer did not satisfy Rule 8(c)).

However, as held above, failure to raise an affirmative defense in the Answer does not waive Defendants' ability to later raise in the Opposition, absent unfair surprise or prejudice to Plaintiff Walker. *See Brinkley*, 180 F.3d at 612 ("absent unfair surprise or prejudice to the plaintiff,

a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive

motion").

The Court finds that the evidence first reflects that on December 10, 2021, Defendants

answered  the relevant interrogatory:

> **INTERROGATORY 12:** Do you contend that Plaintiff was, at any
> time during the Relevant Employment Period, exempt from the
> FLSA overtime compensation requirements? If yes, please provide
> the factual basis for this contention and identify all documents
> relating thereto.
> **RESPONSE:** Yes. Plaintiff was a full-time salaried employee.

(Defendant Civility MS's Answers to Plaintiff Walker's First Set of Interrogatories, "Defendant

Civility MS's Ans. to Interrog.," at No. 12, J.A. 000050). Next, on February 3, 2022, Defendants

supplemented another interrogatory response:

> **INTERROGATORY 6:** Identify all terms and conditions of
> Plaintiffs employment with you during the Relevant Employment
> Period, including but not limited to, (i) salary or hourly pay,
> commissions, bonuses, and benefits Plaintiff was to receive and any
> conditions to the receipt thereof; and (ii) job title and duties. Identify
> all documents or statements which relate thereto, including to any
> changes made with respect to (i) or (ii), above.
> **RESPONSE:** Mr. Walker was a salaried Corporate
> Program/Business Development Manager with medical and dental
> benefits. The employee also had the option to participate in the 401K
> program. The employee was paid on a semi-monthly basis and was
> classified as an Exempt employee according to the FLSA (Fair
> Labor Standards Act). Bonuses were provided to staff based on the
> end-of-year financial statement.

(Defendant Civility MS's Supplemental Answers to Plaintiff Walker's First Set of Interrogatories,

"Defendant Civility MS's Supplemental Ans. to Interrog.," at No. 6, J.A. 000236). In addition,

when asked if he was an exempt employee under the FLSA during his deposition, Plaintiff Walker

testified, "If it is not a salary, you know, I was a salaried employee, I was not an hourly employee

with Civility. Never was an … hourly employee." (Plaintiff Walker Dep., 29:1730:5, J.A. 000081-82).

Thus, the instant case is analogous to *Bryant Real Estate, Inc*. In *Bryant Real Estate, Inc.*, the plaintiffs brought breach of contract and unjust enrichment claims against the defendant for failing to pay the brokerage commission on a sale of land. In its answer, the defendant did not raise a statutory sunset provision as an affirmative defense, and "there were no facts that arose in discovery that gave rise to this defense." 106 F. App'x at 187. The defendant did not mention the defense in its initial interrogatory responses. Instead, nineteen days after the close of discovery, defendant amended its interrogatory responses to assert the specific provision as a defense. The plaintiffs did not seek further discovery on this issue or request to extend the discovery deadline. Nor did the defendant offer any explanation for its failure to satisfy Rule 8(c). Thereafter, the defendant asserted the defense in its motion for summary judgment and alternatively requested leave to amend its answer. The district court granted summary judgment in favor of the defendant. An appeal followed. Because the defendant revised its interrogatory responses to include the specific provision and plaintiffs had the opportunity to present argument in their opposition, the Fourth Circuit found no prejudice to the plaintiffs. Thus, the Fourth Circuit ultimately held that "[w]hile it is true that a defendant who seeks to introduce an affirmative defense at the last minute will usually find himself in a perilous position, we are unwilling to second-guess the district court under the circumstances of this case." 106 F. App'x at 187.

Upon examining the record, the Court finds that it is a very close call as to whether Plaintiff Walker has demonstrated prejudice. On one side of the factual ledger, if you will, the Court could find that Defendants' failure to specifically identify the executive and administrative FLSA exemptions points towards unfair prejudice to Plaintiff Walker. However, on the other side of the

factual ledger, the fact that Plaintiff Walker had the opportunity to address Defendants' representation that Plaintiff Walker was exempt from overtime wages due to his position as Corporate Program/Business Development Manager and semi-monthly salary payments—during discovery and in his summary judgment briefing—points towards a lack of prejudice.

The Court is ultimately persuaded by the fact that Plaintiff Walker anticipated that Defendants would specifically raise the executive and administrative FLSA exemptions as a defense, despite Defendants' failure to identify which FLSA exemption they intended to assert in its discovery responses. Indeed, in moving for summary judgment, Plaintiff Walker argues at great length that neither the executive nor administrative FLSA exemptions apply because he was not a salaried employee. Thus, the Court finds that Plaintiff Walker cannot demonstrate unfair prejudice because of the many exemptions, and the record supports the conclusion that he anticipated the specific FLSA exemptions (executive and administrative) that Defendants would raise in the Opposition when he moved for summary judgment. *See Allen v. Enabling Techs. Corp.*, Civ. No. WMN-14-4033, 2016 WL 4240074, at *3 (D. Md. Aug. 11, 2016) (finding "Plaintiffs cannot show prejudice because the primary issue focused on throughout discovery was whether they were properly classified as exempt employees and Plaintiffs' Motion for Summary Judgment sufficiently contemplates and responds to those exemptions").

Because Plaintiff Walker has failed to show unfair prejudice, the Court will next examine whether he was subject to the executive and administrative FLSA exemptions.

### 2.  *FLSA and Its Exemptions*

Employees covered under the FLSA are entitled to a minimum wage and to overtime compensation at one and one-half times the regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a)(1), 207(a)(1). The MWHL's requirements track those of the

FLSA. Md. Code Ann. Lab. & Empl. § 3-401 *et. seq.* Thus, Plaintiff Walker's claim under the MWHL "stands or falls on the success of his claim under the FLSA." *Bonilla v. Dops, Inc.*, Civ. No. GJH-14-3055, 2016 WL 828096, at *3 (D. Md. Feb. 29, 2016) (quoting *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)).

The requirements to pay overtime under the FLSA and MWHL do not apply to exempt employees. 29 U.S.C. § 213; Md. Code Ann. Lab. & Empl. § 3-403; *see also Ketner v. Branch Banking & Trust Co.*, 143 F. Supp. 3d 370, 374 (M.D.N.C. 2015). Both the FLSA and the MWHL have overtime compensation exemptions for workers who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); Md. Code Ann. Lab. & Empl. § 3-403(1). In this case, Defendants aver that the executive and administrative exemptions apply to Plaintiff Walker.

The question of whether an employee has exempt status is an affirmative defense. Thus, for an employer to avail itself of the executive and/or the administrative exemptions, an employer must establish by clear and convincing evidence that an employee qualifies for such an exemption. *Lovo v. Am. Sugar Ref., Inc.*, Civ. No. RDB-17-418, 2018 WL 3956688, at *7 (D. Md. Aug. 17, 2018) (further citation omitted); *see also Sanchez Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 351–52 (4th Cir. 2023); *McLaughlin v. Murphy*, 436 F. Supp. 2d 732, 736 (D. Md. 2005), *aff'd*, 247 F. App'x 430 (4th Cir. 2007) (per curium) ("Because the employee's exempt status is an affirmative defense, the employer bears the burden of proving the exemption by clear and convincing evidence") (citation omitted).

The determination of whether an employee qualifies for an exemption is a question of law. *Lovo*, *supra*, 2018 WL 3956688, at *7 (citing *Icicle Foods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). When a court engages in its determination, it should give the exemptions "a fair (rather

than 'narrow') interpretation." *Lovo*, 2018 WL 3956688, at *7 (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 138 S.Ct. 1134, 1142 (2018)(further citation and internal quotation marks omitted).

Even though the FLSA does not define the terms "executive," or "administrative," the U.S. Department of Labor has issued regulations that interpret these so-called "white collar exemptions." *Falaiye v. CCA Acad. Res., LLC*, Civ. No. PX 16-2887, 2017 WL 4098740, at *3 (D. Md. Sept. 14, 2017) (quoting *Auer v. Robbins*, 519 U.S. 452, 456 (1997)). The State of Maryland has also issued regulations on these exemptions, which mirror the FLSA's regulations. *Lovo, supra,* (citing Md. Code Regs. 09.12.41.01, 09.12.41.05).

The federal regulations provide that "there are two tests that a plaintiff must satisfy to qualify for either the executive or administrative exemption: (1) a 'salary basis' test; and (2) a 'primary duties' test." *Lovo*, 2018 WL 3956688, at *7 (citing *Bonilla,* 2016 WL 828096, at*4).

A court is required to "look beyond the employee's job title and consider the employee's salary and duties to determine whether an FLSA exemption applies." *Hobson v. Local 689, Amalgamated Transit Union AFL-CIO*, Civ. No. TDC-21-2374, 2022 WL 3028073, at *2 (D. Md. Aug. 1, 2022) (citing 29 C.F.R. § 541.2) (administrative FLSA exemption); *Walsh v. Sofia & Gicelle, Inc.*, Civ. No. TDC-19-0934, 2021 WL 3472649, at *5 (citing 29 C.F.R. § 541.2) (executive FLSA exemption).

### a. Salary Basis Test

Plaintiff Walker argues that Defendants fail to demonstrate that he satisfies the "salary basis" test under the executive and administrative FLSA exemptions for two reasons. First, Plaintiff Walker was paid a salary less than $684 per week for the following pay periods: (a) June 1, 2018 to June 15, 2018; (b) August 1 to August 15, 2018; (c) August 16, 2018 to September 30,

2018; and (d) October 1, 2018 to February 28, 2019. (Motion, pp. 11, 12). Second, Plaintiff Walker was not paid a predetermined amount, i.e., his $110,000 salary, from July 16, 2018 to July 31, 2018, and from March 1, 2019 to December 31, 2019. (*Id.*). To advance his arguments, Plaintiff Walker relies on his payroll records. (Plaintiff Walker's Payroll Report, J.A. 000220-27).

Defendants do not advance any argument with respect to whether Plaintiff Walker satisfies the "salary basis test." Rather, Defendants argue that there is a genuine dispute as to whether Plaintiff Walker is exempt from overtime wages under the FLSA, because Plaintiff Walker's primary duties were both executive and administrative. (Opposition, pp. 9-12). In the Reply, Plaintiff Walker argues that Defendants cannot establish that he was subject to the executive and administrative FLSA exemptions because: (1) he does not satisfy the "salary basis" test; and (2) Defendants conceded that he was not paid on a salary basis because they failed to address the issue in the Opposition. (Reply, pp. 5, 6).

The "salary basis" federal regulations provide, in pertinent part:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). An employee satisfies the "salary basis test" under the executive and administrative FLSA exemptions when "compensated on a salary or fee basis at a rate of not less than $684 per week." *Hobson*, 2022 WL 3028073, at *2 (administrative FLSA exemption); *Walsh*, 2021 WL 3472649, at *5 (executive FLSA exemption). Of particular relevance is the following provision of the federal regulations:

> The required amount of compensation per week may be translated into equivalent amounts for periods longer than one week. For example, the $684–per–week requirement will be met if the

employee is compensated biweekly on a salary basis of not less than $1,368, semimonthly on a salary basis of not less than $1,482, or monthly on a salary basis of not less than $2,964. However, the shortest period of payment that will meet this compensation requirement is one week.

29 C.F.R. § 541.600.

As a preliminary matter, the Court finds unpersuasive Defendants' argument that Plaintiff Walker is not entitled to summary judgment because there are genuine disputes as to whether Plaintiff Walker is exempt under the FLSA and whether his primary job duties are executive and administrative. Defendants misstate the burden of proof to assert an FLSA exemption. As held earlier, Defendants must prove, by clear and convincing evidence, that Plaintiff Walker is exempt from overtime wages under the FLSA. *See Sanchez Carrera*, 75 F.4th at 351-52.

> *i. June 1, 2018 to June 15, 2018; August 16, 2018 to September 30, 2018; and October 1, 2018 to February 28, 2019*

When analyzing the evidence before it, Plaintiff Walker correctly argues that he was not paid on a salaried basis from June 1, 2018 to June 15, 2018, August 16, 2018 to September 30, 2018, and October 1, 2018 to February 28, 2019. (Plaintiff Walker's Payroll Report, J.A. 000227; Plaintiff Walker Dep., 32:17-33:4, J.A. 000084-85; Plaintiff Walker Dep., 46:12-15, J.A. 000098; Plaintiff Walker Affidavit, ¶ 3, J.A. 000214; Defendant Sayles Dep., 26:3-6, J.A. 000008).

As held above, to be exempt from overtime wages under the executive and administrative exemptions, an employee must be compensated at a rate of not less than $684 per week. *Hobson*, 2022 WL 3028073, at *2 (administrative FLSA exemption); *Walsh*, 2021 WL 3472649, at *5 (executive FLSA exemption). In addition, the federal regulations provide that the $684 per week requirement is met when an employee is compensated biweekly at a rate not less than $1,368. 29 C.F.R. § 541.600(b). The Court finds that the evidence before it reflects that Plaintiff Walker received no pay from June 1, 2018 to June 15, 2018, and from October 1, 2018 to February 28,

2019.[4] (Plaintiff Walker's Payroll Report, J.A. 000227; Plaintiff Walker Dep., 32:17-33:4, J.A. 000084-85; Plaintiff Walker Dep., 46:12-15, J.A. 000098; Plaintiff Walker Affidavit, ¶ 3, J.A. 000214; Defendant Sayles Dep., 26:3-6, J.A. 000008). The evidence before the Court also reflects that Plaintiff Walker received approximately $1,042.00 for the August 16, 2018 to September 30, 2018 pay periods. (Plaintiff Walker's Payroll Report, J.A. 000225). Thus, the Court finds that Plaintiff Walker was not compensated at the required minimum rate of $684 per week from June 1, 2018 to June 15, 2018, and from October 1, 2018 to February 28, 2019. In addition, the Court finds that Plaintiff Walker was not compensated at the required minimum rate of $1,368 biweekly from August 16, 2018 to September 30, 2018. Accordingly, the Court finds that Defendants failed to meet their burden and have not demonstrated by clear and convincing evidence that Plaintiff Walker satisfied the "salary basis" test under the executive and administrative FLSA exemptions for these periods of time. *See Shockley v. City of Newport News*, 997 F.2d 18, 21(4th Cir. 1993) (finding plaintiffs were not paid on a salaried basis under the FLSA executive and administrative exemptions).

*ii.   July 16, 2018 to July 31, 2018 and March 1, 2019 to December 31, 2019*

Next, the Court finds unavailing Plaintiff Walker's argument that he was not paid on a "salaried basis" because his pay was subject to reductions, i.e., he was paid less than his promised $110,000 salary from July 16, 2018 to July 31, 2018 and March 1, 2019 to December 31, 2019. As held above, the "salary basis" test requires that the defendant prove by clear and convincing evidence that Plaintiff Walker received a predetermined amount of at least $684 per week that is not "subject to reduction *because of variations in the quality or quantity of the work performed*." 29 C.F.R. § 541.602(a)(emphasis supplied).

---

[4] *See* Section III.B.3.a, *infra*, for the Court's analysis of the Plaintiff Walker's employment status from October 1, 2018 to February 28, 2019.

Here, there is no evidence in the record that demonstrates that Plaintiff Walker's reduction in pay was because of variations in the quality or quantity of the work he performed. Moreover, the Court finds that the evidence reflects that Plaintiff Walker received a salary in excess of the required $684 per week or $1,368.29 biweekly rate during these pay periods. Indeed, his payroll records indicate that Plaintiff Walker was paid $3,490.08 from July 16, 2018 to July 31, 2018 and varying pay between $1,528.85 and $3,346.87 from March 1, 2019 to December 31, 2019. (Plaintiff Walker's Payroll Report, J.A. 000220-24, 26). Thus, the Court finds that Defendants have met their burden in establishing by clear and convincing evidence that the "salary basis" test applies to Plaintiff Walker for the July 16, 2018 to July 31, 2018 and March 1, 2019 to December 31, 2019 pay periods. *See Shockley*, 997 F.2d at 21 (finding plaintiffs were not paid on a salaried basis under the FLSA executive and administrative exemptions); *see also Lovo*, 2018 WL 3956688, at *7 (finding that the salary basis test is met under the executive FLSA exemption where plaintiff was paid more than minimum rate as required by the regulations).

### iii.   *August 1, 2018 to August 15, 2018*

Third, Plaintiff Walker argues that despite receiving $4,833.61 in pay for the August 1, 2018 to August 15, 2018 pay period, he was not paid on a "salary basis" because Defendants paid him a $560.94 salary and a $4,272.67 bonus. (Motion, p. 11). The Court agrees with Plaintiff Walker.

As relevant here, the federal regulations provide that up to ten percent of the $684 per week (or $1,368.29 biweekly) requirement "may be satisfied by the payment of nondiscretionary bonuses, incentives, and commissions, that are paid annually or more frequently." 29 C.F.R. § 541.602.

The Court finds that the evidence before it reflects that that Plaintiff Walker received a $560.94 salary payment for the August 1, 2018 to August 15, 2018 pay period. (Plaintiff Walker's Payroll Report, J.A. 000226). The fact that Defendants paid Plaintiff Walker less than the $684 per week requirement, however, does not necessarily mean that Defendants cannot meet their burden of proof as it relates to the executive and administrative FLSA exemptions. Indeed, Defendants would demonstrate that Plaintiff Walker satisfies the "salary basis" test if no more than ten percent of his salary is compensated in bonus payments. *See* 29 C.F.R. § 541.602. The undisputed evidence before the Court reflects that approximately 41 percent of Plaintiff Walker's salary was ($560.94 /$1,368 = 0.4099) compensated with the $4,272.67 bonus payment. Thus, Defendants failed to prove with clear and convincing evidence that Plaintiff Walker was paid on a "salary basis" from August 1, 2018 to August 15, 2018 pay period. *See Shockley*, 997 F.2d at 21 (finding plaintiffs were not paid on a salaried basis under the FLSA executive and administrative exemptions).

In sum, Defendants failed to prove by clear and convincing evidence that Plaintiff Walker satisfies the "salary basis" test for the following pay periods: (a) June 1, 2018 to June 15, 2018; (b) August 1, 2018 to August 15, 2018; (c) August 16, 2018 to September 30, 2018; and (d) October 1, 2018 to February 28, 2019. *See Lovo*, 2018 WL 3956688, at *7 (holding a plaintiff must satisfy the "salary basis" test to qualify for either the executive or the administrative exemption). Thus, the Court will only consider whether Plaintiff Walker is exempt from overtime wages under the executive and administrative FLSA exemptions for the following periods: July 16, 2018 to July 31, 2018, and March 1, 2019 to December 31, 2019. To do so, the Court first examines whether Defendants have established that Plaintiff Walker satisfies the "primary duties" test. *Bonilla*, 2016 WL 828096, at *4.

      b.  Executive Exemption

Defendants argue that Plaintiff Walker is exempt from overtime wages under the executive FLSA exemption because his primary duties involved overseeing Civility MS contracts, managing employees, and making hiring decisions. (Opposition, p. 12). Plaintiff Walker does not argue whether his primary duties qualify under the executive FLSA exemption, but rather argues that he does not qualify as an executive because he does not satisfy the "salary basis" test. (Reply, pp. 5, 6). Plaintiff Walker further argues that Defendants waived the ability to raise the executive FLSA exemption by failing to address whether he was paid on a "salary basis." (*Id.*).

The regulations provide that an employee is considered an executive if, in addition to meeting the salary test, the employee meets the "primary duties" test; to wit, the employee has:

> (1) [has the primary duty of] management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof,
> (2) ... customarily and regularly directs the work of two or more other employees; and
> (3) ... has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Lovo*, 2018 WL 3956688, at *8 (citing 29 CFR § 541.100(a)). The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." *Blake v. Broadway Servs., Inc.*, Civ. No. SAG-18-0086, 2020 WL 1675954, at *4 (D. Md. Apr. 6, 2020) (citing 29 C.F.R. § 541.700(a)).

In addition, the U.S. Department of Labor provides:

> the following examples of exempt managerial duties: interviewing, selecting, and training employees; directing their work; setting and adjusting rates of pay and hours of work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in status; handling

> complaints and grievances and disciplining when necessary;
> planning the work; determining the techniques to be used;
> apportioning work among workers; determining the type of
> materials, supplies, machinery or tools to be used or merchandise to
> be bought, stocked, and sold; controlling the flow and distribution
> of materials or merchandise and supplies; and providing for the
> safety of the employees and the property.

*Kreiner v. Dolgencorp, Inc.*, 841 F. Supp. 2d 897, 905–06 (D. Md. 2012) (citing 29 C.F.R. §
541.102).

As stated above, an "employee's primary duty must be management of the enterprise or a
customarily recognized department or subdivision." *Lovo*, 2018 WL 3956688, at *8. "A
customarily recognized department or subdivision must have a permanent status and a continuing
function." *Id.* (citing 29 CFR § 541.103(a)).

As a preliminary matter, the Court held in Section III.B.2.a.ii that Defendants have only
met their burden to establish by clear and convincing evidence that the "salary basis" test applies
to Plaintiff Walker for the pay periods of July 16, 2018 to July 31, 2018, and March 1, 2019 to
December 31, 2019. Thus, contrary to Plaintiff Walker's argument, whether Plaintiff Walker is
exempt from overtime wages for the pay periods of July 16, 2018 to July 31, 2018, and March 1,
2019 to December 31, 2019 turns on whether Defendants have met their burden to establish by
clear and convincing evidence that the "primary duties" test applies to him. In addition, as held in
Section III.B.2.a.i, Defendants failed to demonstrate by clear and convincing evidence that the
"salary basis" test  has been met for Plaintiff Walker for the June 1, 2018 to June 15, 2018, August
16, 2018 to September 30, 2018, and October 1, 2018 to February 28, 2019 pay periods. Thus,
because they have failed to establish that Plaintiff Walker satisfies the first test, Defendants cannot
satisfy their burden that Plaintiff Walker is exempt from overtime wages under the FLSA. *Bonilla,*

2016 WL 828096, at *4 (plaintiff must satisfy both the "salary basis" test and "primary duties" test to qualify for either the executive or administrative exemption).

Next, the evidence reflects that Plaintiff Walker became the corporate program manager on July 16, 2018. In this role, Plaintiff Walker managed Civility MS staff and interacted with both employees and customers. (Defendant Sayles Dep., 12:12-20, J.A. 000003). Plaintiff Walker was also responsible for overseeing all of Civility MS contracts. (Defendant Sayles Dep., 72:11-14, J.A. 000019). Indeed, Plaintiff Walker similarly testified that his job responsibilities entailed managing employees, customers expectations, and active Civility MS contracts. (Plaintiff Walker Dep., 54:13-17, J.A. 000106).

At a minimum, the Court finds that Defendants cannot meet their burden by clear and convincing evidence with respect to the first element: whether Plaintiff Walker's "primary duty is management of the enterprise or a customarily recognized department or subdivision." 29 CFR § 541.100(a). Although the evidence before the Court reflects that Plaintiff managed Civility MS contracts, the Court finds that Defendants failed to produce evidence that Plaintiff Walker managed a Civility MS department or subdivision. Put another way, Defendants do not put any evidence before the Court to support their contention that Plaintiff Walker was the corporate program manager of a specific division at Civility MS. Moreover, the Court finds that Defendants failed to cite to any evidence that the managerial duties that he performed involved "dealing with the employees," "dealing with the staples with the government," and managing the employees assigned to a contract. 29 CFR § 541.100(a). For example, did managing employees require that Plaintiff Walker handle employee complaints, direct employees work, set employees' payrates, or apportion work among employees? Simply put, there is no specific evidence before the Court of the managerial duties that Defendants allege that Plaintiff Walker performed as a primary duty.

Without any evidence of the managerial duties that Plaintiff Walker performed when "dealing with the employees" and " the staples with the government" or when managing employees, Defendants cannot satisfy their burden of proof that Plaintiff Walker qualifies for the overtime executive exemption under the FLSA.

      c.  <u>Administrative Exemption</u>

Defendants argue that Plaintiff Walker is exempt from overtime wages under the FLSA administrative exemption because Plaintiff Walker performed office work related to Civility MS's general business operations, and had discretion and independent judgment to manage contracts and approve employee timesheets. (Opposition, p. 12). Plaintiff Walker argues that Defendants waived the ability to raise the administrative FLSA exemption because they failed to prove, let alone address, the issue of whether he satisfies the "salary basis" test. (Reply, pp. 5, 6).

As a preliminary matter, the Court held in Section III.B.2.b that the issue of whether Plaintiff Walker is exempt from overtime wages turns on the primary duties test for the July 16, 2018 to July 31, 2018, and March 1, 2019 to December 31, 2019 pay periods.

The administrative FLSA exemption applies to employees:

> (1) who are compensated at a rate of not less than $684 per week;
> (2) whose primary duty is the performance of office or non-manual
> work directly related to the management or general business
> operations of the employer or the employer's customers; and (3)
> whose primary duty includes the exercise of discretion and
> independent judgment with respect to matters of significance.

*Morrissey v. CES Computer Enhancement Sys., Inc.*, Civ. No. SAG-21-00899, 2023 WL 2432838, at *4 (D. Md. Mar. 9, 2023) (citing 29 C.F.R. § 541.200(a)). "Primary duty" in this context means "the principal, main, major, or most important duty that the employee performs." *Id.* (citing 29 C.F.R. § 541.700(a)).

###### i.   Work Directly Related to Management or Business Operations

To meet the second requirement of the test, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Lovo*, 2018 WL 3956688, at *13 (citing 29 CFR § 541.201(a)). This work includes, but is not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.

*Id.* (citing 29 CFR § 541.201(b)).

In the instant case, Civility MS is a federal government contracting firm that provides consulting services to its clients. (Defendant Sayles Dep., 7:1-3, J.A. 000003). Prior to his promotion to corporate program manager, Plaintiff Walker supported Civility MS contracts by working on-site with the government agencies. (Plaintiff Walker Dep. 29:1-4, J.A. 0000080; Defendant Sayles Dep. 10:17-11:11, J.A. 0000004). However, when Plaintiff Walker was hired as a corporate program manager, he moved to the Civility MS corporate headquarters. At which time, Plaintiff was responsible for managing all active Civility MS contracts with agencies. (Plaintiff Walker Dep. 29:1-15, J.A. 0000080; Plaintiff Walker Dep. 35:11-16, J.A. 0000087). Thus, as a corporate program manager, Plaintiff Walker oversaw the staff rather than working directing on the government contract. (Defendant Sayles Dep. 73:20-74:3, J.A. 0000019-20). Indeed, Plaintiff Walker testified that his primary duties consisted of managing the expectations of the government clients and Civility MS employees supporting the mission of the contracts. (Plaintiff Walker Dep.

54:11-15, J.A. 0000106). Finally, Plaintiff Walker sent offer letters, determined employees' salaries, and approved employee timesheets. (Defendant Sayles Dep., 70:16-71:17, J.A. 0000019; Plaintiff Walker Dep. 67:7-15, J.A. 0000119-20).

When analyzing the facts, the Court first finds that Plaintiff Walker's primary duty was to perform work directly related to the management or general business operations. Plaintiff Walker's primary duties consisted of quality control by ensuring that the needs of both the clients and employees were met on all active Civility MS contracts. (Plaintiff Walker Dep. 54:11-15, J.A. 0000106). In addition, Plaintiff Walker's primary duties involved human resources and personnel management as he was responsible for sending employee offer letters, determining employee pay, and approving employee timesheets. Next, the Court finds that Plaintiff Walker's primary duties were "office or non-manual work" as it is undisputed that Plaintiff Walker worked at the Civility MS headquarters as a corporate program manager. Thus, Defendants have met their burden of establishing by clear and convincing evidence that primary duties test applies to Plaintiff Walker. *See Brown v. Serenity C & C, Inc.*, 391 F. Supp. 3d 546, 558 (E.D. Va. 2019) (finding the second requirement under the administrative FLSA exemption is satisfied where plaintiff performs office work and "[p]laintiff's primary duties fall squarely within the list of examples provided in the regulation").

### ii.  *Exercise of Discretion and Independent Judgment*

The third requirement of the administrative FLSA exemption requires that "the employee must exercise discretion and independent judgment respecting matters of significance." *Lovo*, 2018 WL 3956688, at *15 (citing 29 CFR § 541.202(a)). "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent

judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. §

541.202(c).

In deciding whether an employee exercises discretion and independent judgment, courts

can consider factors including:

> whether the employee has authority to formulate, affect, interpret,
> or implement management policies or operating practices; whether
> the employee carries out major assignments in conducting the
> operations of the business; whether the employee performs work
> that affects business operations to a substantial degree, even if the
> employee's assignments are related to operation of a particular
> segment of the business; whether the employee has authority to
> commit the employer in matters that have significant financial
> impact; whether the employee has authority to waive or deviate from
> established policies and procedures without prior approval; whether
> the employee has the authority to negotiate and bind the company
> on significant matters; whether the employee provides consultation
> or expert advice to management; whether the employee is involved
> in planning long- or short-term business objectives; whether the
> employee investigates and resolves matters of significance on behalf
> of management; and whether the employee represents the company
> in handling complaints, arbitrating disputes or resolving grievances.

*Lovo*, 2018 WL 3956688, at *15 (citing 29 CFR § 541.202(b)).

Here, the record evidence reflects that Defendant Sayles testified, "what I don't do and

never have done and don't do now is micromanage my team. Everybody knows their

responsibilities and their areas of expertise." (Defendant Sayles Dep. 23:9-13, J.A. 0000007). In

addition, as a member of Defendant Sayles's team, Plaintiff Walker testified that his experience

managing the needs of employees and customers allowed him to perform the duties of a corporate

program manager. (Plaintiff Walker Dep. 23:9-13, J.A. 0000106). Plaintiff Walker's primary

duties were to oversee employees, approve the timesheets of employees, and manage the

expectations of employees and clients. (Defendant Sayles Dep. 70:16-73:21, J.A. 0000019).

The Court finds that the evidence before it reflects that Plaintiff Walker exercised discretion and independent judgment when he relied on his experiences managing the needs of employees and customers to perform his primary duties. In addition, given that Plaintiff Walker's primary duties involve overseeing contracts, a reasonable juror could find that his work duties have a substantial impact on Civility MS's government contract business. Moreover, Plaintiff failed to adduce any evidence to create a dispute of fact as to whether he exercised discretion and independent judgment when performing his primary duties. Accordingly, Plaintiff Walker's primary duties satisfy the second requirement of the administrative FLSA exemption. *See Lovo*, 2018 WL 3956688, at *16 (finding plaintiff qualifies for the administrative exemption from the FLSA and MWHL overtime requirements where plaintiff's primary duty involved exercising discretion and independent judgment).

In sum, the Court finds that Defendants have met their burden by clear and convincing evidence that Plaintiff Walker qualifies for the administrative FLSA exemption, and the Maryland counterpart thereto, for the period of July 16, 2018 through July 31, 2018 and March 1, 2019 to December 31, 2019. Plaintiff Walker therefore is exempt from overtime wages for the aforementioned period of time. *See Brown*, 391 F. Supp. 3d at 561–62 ("Defendant has met its burden to prove that all requirements for application of the administrative exemption have been satisfied and, thus, Defendant is not subject to any liability for failure to pay Plaintiff for her overtime hours as Plaintiff was not entitled to overtime pay"). Accordingly, the Motion is denied with respect to Counts I, III, and V.[5]

---

[5] *See* Section III.B.3.c, *infra*, for the Court's analysis of overtime wages under the FLSA, MWHL, and MWPCL.

### 3. Liability Under the FLSA, MWHL, and MWPCL (Counts I-IV)

As set forth herein, the requirements to establish liability under the FLSA also apply to the MWHL and the MWPCL. *See, e.g., Fiallos v. Hamzah Slaughter House, LLC*, Civ. No. JMC-20-03577, 2022 WL 111165, at *2 (D. Md. Jan. 11, 2022);[6] *McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014), *aff'd,* 825 F.3d 235 (4th Cir. 2016).

### a. Employment Status from October 1, 2018 to February 28, 2019

As a preliminary matter, the parties dispute whether Plaintiff Walker was employed by Defendants from October 1, 2018 to February 28, 2019. As found earlier, Defendants contend that Plaintiff Walker was laid off on September 30, 2018 and later rehired on March 1, 2019. In contrast, Plaintiff Walker argues that he was continuously employed by Defendants from July 25, 2017 to June 30, 2020, and that Defendants cannot rely solely on Defendant Sayles's self-serving testimony to create a genuine dispute of material fact. To advance this argument, Plaintiff Walker cites to Dawn Ellis's affidavit, which allegedly corroborates that Plaintiff Walker continued to work full-time from October 1, 2018 to February 28, 2019.

Upon examining the record and construing the facts in the light most favorable to Defendants, the Court finds that there is a genuine dispute of fact as to whether Plaintiff Walker was an employee from October 1, 2018 to February 28, 2019. First, the undisputed evidence before the Court demonstrates that Defendant Sayles did not keep records of Plaintiff Walker's time after he was allegedly laid off. (Defendant Sayles Dep., 9:13-19:1, J.A. 000003-06). Second, there are conflicting accounts from Plaintiff Walker as to whether Defendant Sayles promised to pay him after September 30, 2018. For example, Plaintiff Walker testified as follows:

---

[6] However, the MWPCL provides for treble damages for violations of § 3–5023 or § 3–505. *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 669–70 (D. Md. 2011)

> Q: Okay. So in—so as [Defendant Sayles] moved into October of 2018, you were—were you receiving any—any pay from Civility Management?
> A: No, sir.
> Q: Had you been told that your pay rate would be decreased as a result of the various issues that were involving Civility at that time?
> A: It was communicated with all of the corporate employees at the time that the company was not in a position to pay us a salary, and she was not asking us to come in to work for her, but she would make us whole. That we was in this fight together. But I've never received any documentation that I was laid off or would receive any—any salary.

(Plaintiff Walker Dep., 46:19-47:5, J.A. 000098-99). However, Plaintiff Walker later testified to

the following:

> Q: And when your pay was reduced or eliminated at the end of September 2018, you—you expected that Civility would—would try to make—to make this right by you? To make it right—
>
> A: I never—I never expected it, sir, but when I received an e-mail from Sheryl Thompson, I was–I gratefully appreciated, understanding the sacrifices that I made.

(Plaintiff Walker Dep., 61:2-10, J.A. 000113). In contrast, Defendant Sayles testified as follows:

> Q: So did you make the final decision that the layoffs would be for Mario Walker, DeAnna Boyd and Sandy Goines?
> A: That's correct, sir.
> Q. What did the layoffs entail; were they no longer being paid; were they out of a job; were they terminated; how would you describe that?
> A: They were terminated because two of the three of them filed for unemployment. And the way they were able to, of course, file for unemployment is because they did not have a job during that season.
> Q: So at that point, as of say October 1, 2018, Mario Walker was no longer being paid by Civility; is that right?
> A: That's right. Mario Walker was no longer being paid and he knew that as well, sir.
> Q: And he wasn't paid for a period of five months; is that correct?
> A: That's correct, because he was unemployed. I mean, he was laid off. So why would I be paying him?

(Defendant Sayles Dep., 25:8-26:6, J.A. 000007-8). Thus, when analyzing Defendant Sayles's testimony and comparing it to Plaintiff Walker's later testimony, (Plaintiff Walker Dep., 61:2-10, J.A. 000113), a reasonable jury could conclude that Plaintiff Walker was laid off on September 30, 2018.

Third, contrary to Plaintiff Walker's argument, Ms. Ellis's declarations do not resolve whether Plaintiff Walker was laid off on September 30, 2018. On one hand, Ms. Ellis's declaration seemingly corroborates Plaintiff Walker's version that he continued to work full-time without pay. However, at the same time, Ms. Ellis's declaration corroborates Defendants' version that Plaintiff Walker was the only employee laid off on September 30, 2018 that did not file for unemployment. *See* Ellis Affidavit, ¶¶ 3, 4, J.A. 000233. Thus, this is an issue that the jury must resolve.

In sum, genuine disputes of material fact exist as to whether Defendants employed Plaintiff Walker from October 1, 2018 to February 28, 2019 which preclude entry of summary judgment. *See Fiallos*, 2022 WL 111165, at *3 ("Where an employer does not keep accurate timekeeping records and 'liability hinges on the credibility of each parties' testimony,' summary judgment is improper because 'weighing evidence and determining witness credibility is reserved for the jury'") (quoting *McFeely*, 47 F. Supp. 3d at 278)). Accordingly, there is a genuine dispute of material fact as to whether Plaintiff Walker is entitled to unpaid wages and overtime wages from October 1, 2018 to February 28, 2019, which preclude summary judgment on this issue for Counts I-V.

      b.  <u>Minimum Wage under FLSA (Counts II), MWHL (Count IV), and MWPCL (Count V)</u>

Pursuant to the FLSA, an employer is required to pay nonexempt employees at least the federal minimum wage for all hours worked.  *Turner v. Human Genome Science, Inc.,* 292 F.Supp.2d 738, 744 (D. Md. 2003); *see* 29 U.S.C. § 206(a)(1).  In addition, the FLSA requires an

employer to pay an employee overtime for hours that the employee works that exceed 40 hours per week. *Id.*; *see* 29 U.S.C. § 207(a)(1). Moreover, overtime pay shall be "at a rate not less than one and one-half times the regular rate and which [the employee] is employed." 29 U.S.C. § 207(a)(1); Md. Code Ann., Lab. & Empl. §§ 3-415, 3-420.

To prevail on an FLSA claim for failure to pay minimum wage, Plaintiff Walker must establish that he "did not receive compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate during a given week." *Tall v. MV Transportation,* Civ. No. DKC 13-2306, 2014 WL 2964279, at *5 (D. Md. June 30, 2014); *see also Blankenship v. Thurston Motor Lines, Inc.,* 415 F.2d 1193, 1198 (4th Cir. 1969).

Under the MWHL, employers are required to pay their employees a minimum hourly wage, and if an employee works more than 40 hours in a week, employees must be paid an overtime rate. Md. Code Ann., Lab. & Empl. §§ 3-413(b); 3-415(a) (2019).

In this District, "[c]laims under the FLSA and the MWHL can be analyzed together. This is because [t]he requirements under the MWHL mirror those of the federal law.'" *Gaither v. Davi Transportation Services, LLC*, No. 18-cv-1447-ELH, 2020 WL 2614783, at *4 (D. Md. May 22, 2020) (quoting *Turner v. Human Genome Sciences, Inc.*, 292 F. Supp. 738, 744 (D. Md. 2003); citing *Friolo v. Frankel*, 373 Md. 501, 513 (2003)). Thus, to prove an overtime claim under the MWHL and a failure to pay minimum wages claim, the requirements are the same as those under the FLSA. *McFeely v. Jackson Street Entm't, LLC,* 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014)(MWHL is the FLSA's "state statutory equivalent"); *Gaither*, *supra*, 2020 WL 2614783, at *4; *see also Friolo v. Frankel*, 373 Md. 501, 513 (2003).

Under the MWPCL, an employer must pay its employees what they are owed "at least once in every two weeks or twice in each month." Md. Code Ann., Lab. & Empl. § 3-502(a)(1)(ii). In

addition, the law requires an employer to pay its employees all wages due and owing in full upon their departure or termination.  Md. Code Ann., Lab. & Empl. § 3-505(a).

To prove the failure to pay all wages timely and regularly under the MWPCL, a plaintiff must establish that the employer failed to pay its employees regularly while they were employed and in full at the termination of their employment.  *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654 (2014); *see also Marshall v. Safeway*, 437 Md. 542, 561-62 (2014); *see also Allgaier v. Microbiologics, Inc.*, Civ. No. ELH-22-01900, 2023 WL 2837336, at *12 (D. Md. Apr. 7, 2023) (citing Md. Code Ann., Lab. & Empl. § 3-507.2(a))("MWPCL provides an employee with the right to bring a civil suit against an employer to recover unpaid wages"); *Martinez v. K & S Mgmt. Servs., Inc.*, Civ. No. PWG-15-223, 2016 WL 808797, at *7 (D. Md. Mar. 2, 2016) (Under Maryland law, "minimum wage claims are actionable under the MWPCL").

 In addition, if "a court finds that an employer withheld the wage of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." *Allgaier*, 2023 WL 2837336, at *12 (citing § 3-507.2(b)). To determine whether a bona fide dispute exists,  courts analyze whether the employer "has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing." *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 725 (D. Md. 2020), *aff'd,* 860 F. App'x 264 (4th Cir. 2021) (citing *Admiral Mortg. v. Cooper*, 357 Md. 533, 745 A.2d 1026, 1031 (2000)). Whether or not a bona fide dispute exists is a fact-based inquiry best left for resolution by the jury. *Id.*

Plaintiff Walker argues that he is entitled to unpaid minimum wages under the FLSA, MWHL, and MWPCL because: (1) he received no pay from June 1, 2018 to June 15, 2018, and October 1, 2018 to February 28, 2019; and (2) he was paid less than his $110,000 salary from July

16, 2018 to September 30, 2018, and March 1, 2019 to December 31, 2019. Defendants counter that they were not Plaintiff Walker's employer from October 1, 2018 to February 28, 2019.

For the other periods of time for which Plaintiff Walker claims unpaid minimum wages, Defendants argue that summary judgment is not warranted because: (1) Plaintiff was an exempt employee under the FLSA; and (2) there are genuine disputes of material fact as to the amount of wages, if any, Plaintiff Walker is owed. (Opposition, pp. 12, 13). Finally, Defendants contend that any claim for unpaid wages that accrued before August 18, 2018 is barred by the statute of limitations. (*Id.*, pp. 8, 9). In the Reply, Plaintiff Walker failed to address Defendants' statute of limitations argument. The Court finds Defendants' statute-of-limitations argument persuasive.

As a preliminary matter, as held in Section III.B.3.a, *supra*, there are genuine disputes of material fact as to whether Defendants employed Plaintiff Walker during from October 1, 2018 to February 28, 2019 and whether Plaintiff Walker is owed any wages  for this period. However, the parties do not dispute Plaintiff Walker's employment status for the remaining periods. Thus, the question before the Court is whether Plaintiff Walker has met his burden of showing that Defendants failed to pay him minimum wages for the following periods of time: (a) June 1, 2018 to June 15, 2018; (b) July 16, 2018 to July 31, 2018; (c) August 1, 2018 to August 15, 2018; (d) August 16, 2018 to September 30, 2018; and (e) March 1, 2019 to December 31, 2019.

### i. *June 1, 2018 to June 15, 2018*

Even when construing the facts in the light most favorable to Defendants, the Court finds that all requirements to recover a claim of unpaid minimum wages are unquestionably met here. Indeed, it is undisputed that Plaintiff Walker received no pay from June 1, 2018 to June 15, 2018. (Plaintiff Walker's Payroll Report, J.A. 000227). And, Plaintiff Walker testified that he was not paid for the from June 1, 2018 to June 15, 2018 pay period. (Plaintiff Walker Dep., 32:17-33:4,

J.A. 000084-85). Thus, even when construing the evidence in Defendants' favor, the Court finds that summary judgment would ordinarily be entered in Plaintiff Walker's favor, but for the statute of limitations. *See Jahn v. Tiffin Holdings, Inc.*, 2020 WL 1285507, at *5 ("with all three elements for liability met on [FLSA and MWHL] claims, summary judgment in [defendant]'s favor is appropriate).

Next, the Court finds that Defendants correctly argue that Plaintiff Walker's claims for unpaid wages that accrued before August 18, 2018 are barred by the statutes of limitations applicable to FLSA, MWHL, and MWPCL actions.

The FLSA sets forth statute of limitations periods. For non-willful violations of the FLSA, a two-year statute of limitations applies. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) (citing 29 U.S.C. § 255(a)). When the violation is willful, a three-year statute of limitations applies. *Id.* In order to establish willfulness, "a plaintiff must show that the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.'" *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp.2d 880, 890 (D. Md. 2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677 (1988)).

Similarly, the relevant statute of limitations for claims brought under the MWHL is three years. *Caseres v. S & R Mgmt. Co., LLC*, Civ. No. AW-12-1358, 2013 WL 4010894, at *3 (D. Md. Aug. 5, 2013). And, an MWPCL claim must be advanced "within three years and two weeks from the date on which the employer should have paid the wage[s]". *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 897 (D. Md. 2011) (internal quotation marks and citations omitted).

In this case, Plaintiff Walker filed suit against Defendants on August 18, 2021 to include FLSA, MWHL, and MWPCL violations beginning on or about June 1, 2018.

As a preliminary matter, because Plaintiff Walker did not advance any arguments as it relates to the statute of limitations, the Court finds that Plaintiff Walker cannot satisfy his burden of proving that Defendants' alleged FLSA violations were willful. *See Gionfriddo*, 769 F. Supp.2d at 890. Thus, the statute of limitations for Counts I and II is two years, which precludes any claims before August 18, 2019.

Next, the statute of limitations is three years for violations of the MWHL. Thus, the Court finds that the statute of limitations applies to preclude any claims before August 18, 2018 for Counts III and IV.

Finally, the statute of limitations is three years and two weeks for violations of the MWPCL. Thus, the Court finds that the statute of limitations applies to preclude any claims before August 4, 2018 for Count V.

Accordingly, Plaintiff Walker's unpaid wage claims under Counts I-V for the June 1, 2018 to June 15, 2018 pay period are time barred. *See Clayton v. Delmarva Cmty. Servs., Inc.*, 447 F. Supp. 3d 404, 412 (D. Md. 2020) (finding plaintiff's FLSA claims were barred by the statute of limitations); *Rose v. Harloe Mgmt. Corp.*, Civ. No. 16-761-GLR, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017) (finding any claims for failure to pay overtime wages under the MWHL for paychecks issued prior to January 29, 2013 were time-barred); *Boyd v. SFS Communications, LLC*, Civ. No. 15-3068-PJM, 2021 WL 1430723, at *6 n. 7 (D. Md. Apr. 15, 2021) ("Plaintiffs can recover damages for wages owed [under the MWPCL] starting on any payday within two weeks prior to October 8, 2012—i.e., the first payday that occurred on or after September 24, 2012").

In sum, the Motion is denied with respect to unpaid minimum wages from June 1, 2018 to June 15, 2018 under Counts II, IV, and V. Plaintiff is precluded from claiming wages for this period of time.

ii. *July 16, 2018 to September 30, 2018, and March 1, 2019 to December 31, 2019*

Next, Plaintiff Walker argues that Defendants failed to pay him minimum wage for the pay periods between July 16, 2018 to September 30, 2018, and March 1, 2019 to December 31, 2019.

Construing the facts in Plaintiff Walker's payroll records in Defendants' favor, a reasonable jury could find that Plaintiff Walker was paid above the statutory minimum wage amount required under the FLSA, MWHL, and MWPCL. In particular, a reasonable jury could find that  Plaintiff Walker was paid the following:

| Pay Period | Pay |
|---|---|
| July 16, 2018 to July 31, 2018 | $3,490.08 |
| August 1, 2018 to August 15, 2018 | $4,833.61 |
| August 16, 2018 to August 31, 2018 | $1,041.67 |
| September 1, 2018 to September 15, 2018 | $1,041.70 |
| September 16, 2018 to September 30, 2018 | $1,041.67 |
| March 1, 2019 to December 31, 2019 | Various amounts ranging from $1,528.85 to $3,346.87 |

(Plaintiff Walker's Payroll Report, J.A. 00020-26).

Thus, the Court finds that Plaintiff is not entitled to summary judgment on his argument that unpaid wages are due to him for the period of July 16, 2018 to September 30, 2018, and March 1, 2019 to December 31, 2019. *See Id.* (dismissing case where plaintiffs wages do not fall below statutory minimum); *see also Jahn*, 2020 WL 1285507, at *3 ("Because the MWHL is the state statutory equivalent of the FLSA, the elements to prove a cause of action under MWHL statute are identical") (internal quotation marks and citation omitted); *Fiallos*, 2022 WL 111165, at *2 ("The elements to prove an overtime claim under the MWHL and the MWPCL are essentially the same").

Accordingly, the Motion is denied with respect to unpaid minimum wages from July 16, 2018 to September 30, 2018, and March 1, 2019 to December 31, 2019 under Counts II, IV, and V.

In sum, summary judgment is not warranted on any claim for unpaid minimum wages under Counts II, IV, and V.

      c.  <u>Overtime Under FLSA (Count I), MWHL (Count III), and MWPCL (Count V)</u>

In addition to mandating a minimum wage for covered employees, the FLSA requires the payment of overtime for each hour that an employee works that exceeds forty hours per work week. *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 768 (D. Md. 2008) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)).

To establish an FLSA claim for unpaid overtime wages, Plaintiff Walker must demonstrate: (1) that he was employed by the Defendants during the relevant time; (2) that he worked overtime hours for which he was not properly compensated; and (3) Defendants failed to pay overtime wages. *Jahn,* 2020 WL 1285507, at *3.

An employer has a duty to keep accurate records of the hours that an employee works. *Richardson v. All. Residential Co.*, Civ. No. ELH-18-1114, 2020 WL 551316, at *8 (D. Md. Feb. 4, 2020), *on reconsideration in part on other grounds*, Civ. No. ELH-18-1114, 2020 WL 2061512 (D. Md. Apr. 29, 2020) (citing 29 U.S.C. § 211(c)). However, the employee "has the burden of establishing the hours he claims to have worked and the work he claims to have performed for which he was not paid." *Id.* (quoting *McLaughlin*, 436 F. Supp. 2d at 737.

A *prima facie* case as to the hours for which an employee claims he should have been paid can be made through an employee's testimony "giving his recollection of hours worked ... and his case is not to be dismissed nor should recovery be denied, because proof of the number of hours worked is inexact or not perfectly accurate." *Fiallos*, 2022 WL 111165, at *3 (quoting *McFeeley*,

47 F. Supp. 3d at 276) (internal quotation marks omitted). Rather, an employee can meet his burden by "a declaration asserting the average number of hours he worked." *Richardson*, 2020 WL 551316, at *9 (quoting *Sanabria v. Cocody, Inc.*, Civ. No. DKC 16-0365, 2017 WL 3022990, at *4 (D. Md. July 17, 2017)).

Once the employee meets his initial burden, the burden then shifts to the employer, to "'come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Fiallos*, 2022 WL 111165, at *3 (quoting *Richardson*, 2020 WL 551316, at *8).

Relying solely on his affidavit, Plaintiff Walker argues that he is entitled to ten (10) hours of unpaid overtime for the eighty three (83) weeks between June 1, 2018 and December 31, 2019. In the Opposition, Defendants only challenge the number of overtime hours Plaintiff Walker worked from October 1, 2018 to February 28, 2019. For the remaining dates of Plaintiff Walker's employment, Defendants again argue that summary judgment is not warranted because there are several disputes of fact as to the amount of wages, if any, to which Plaintiff Walker is entitled. To advance this argument, Defendants primarily rely on evidence of Plaintiff Walker's bonus payments and personal charges made on the Civility MS credit card. *See* Plaintiff Walker's Payroll Report, J.A. 000220-27.

As a preliminary matter, as held in Section III.B.2.c, the Court has found that Defendants have met their burden of proof by clear and convincing evidence that Plaintiff Walker qualifies as an administrator and therefore is exempt from overtime wages under the FLSA. Even assuming *arguendo* that Plaintiff Walker is not exempt from overtime wages, summary judgment is still inappropriate for the following reasons.

As set forth above in Section III.B.3.a, *supra*, a genuine dispute of material fact exists as to whether Plaintiff Walker was an employee from October 1, 2018 to February 28, 2019, which precludes entry of summary judgment in Plaintiff Walker's favor.

Next, contrary to Plaintiff Walker's argument, construing the facts in the Defendants' favor, a reasonable jury could find that Plaintiff Walker's affidavit only proves the hours he worked from June 1, 2018 to February 28, 2019, which could lead the jury to find that Plaintiff Walker fails to identify the number of overtime hours worked from March 1, 2019 to December 31, 2019. Put another way, there is a genuine dispute as to the amount of overtime Plaintiff Walker worked from March 1, 2019 to December 31, 2019, which precludes entry of summary judgment in Plaintiff Walker's favor.

### i.   June 1, 2018 to June 15, 2018

Plaintiff Walker relies on a general assertion in his affidavit that he "worked, on average, fifty (50) hours per week, including ten (10) hours of overtime." (Plaintiff Walker Affidavit, ¶ 4, J.A. 000214). Thus, the burden shifts to Defendants. *See Fiallos*, 2022 WL 111165, at *3 ("When the employee establishes the initial burden, the burden then shifts to the employer").

Defendants did not produce any evidence to refute a reasonable inference that a factfinder could draw that Plaintiff Walker worked ten hours of overtime. Indeed, it is undisputed that Plaintiff Walker was not paid from June 1, 2018 to June 15, 2018, and payroll records reflect a gap in Plaintiff Walker's pay during this period. (Plaintiff Walker's Payroll Report, J.A. 000227; Plaintiff Walker Dep., 32:17-33:4, J.A. 000084-85). Thus, even when construing the evidence in Defendants' favor, the Court finds that Defendants failed to satisfy their burden. *See Richardson*, 2020 WL 551316, at *8 ("If the employer fails to produce such evidence, the court may then award damages to the employee").

For the same reasons found in Section III.B.3.b.i, *supra*, the Court finds that Defendants correctly argue that Plaintiff Walker's unpaid overtime claims for the June 1, 2018 to June 15, 2018 pay period are time barred under Counts I, III, and V. Accordingly, the Motion is denied with respect to unpaid overtime wages from June 1, 2018 to June 15, 2018 under Counts I, III, and V. Plaintiff is precluded from claiming wages for this period of time.

*ii.   July 16, 2018 to July 31, 2018 and August 1, 2018 to September 30, 2018*

Plaintiff Walker attempts to recover wages beyond the scope of the FLSA. *See Trejo*, 795 F.3d at 448. Put another way, Plaintiff Walker does not allege that Defendants failed to pay him overtime wages under the FLSA, i.e., 1.5 times the statutory minimum wage. Rather, Plaintiff Walker seeks "unpaid overtime" for the pay periods that he was paid less than his $110,000 salary. (Motion, pp. 12-15). Thus, for the same reasons held in Section III.B.3.b.ii, *supra*, Plaintiff Walker's unpaid overtime claim fails. Accordingly, the Motion is denied with respect to unpaid overtime from July 16, 2018 to September 30, 2018 under Counts I, III, and V.

In sum, summary judgment is not warranted on any claim for unpaid overtime wages under Counts I, III, and V. [7]

**C.   Plaintiff Goins' Claims**

As a preliminary matter, the parties only dispute whether Defendants employed Plaintiff Goins from October 1, 2018 to February 28, 2019. Plaintiff Goins argues that she continued to work full-time for Defendants. Plaintiff Goins relies on her answers to interrogatories and Ms. Ellis's affidavit to advance her argument. Defendants counter that Plaintiff Goins was laid off on September 30, 2018 and cite to the following evidence: (1) Plaintiff Goins's unemployment benefits from October 7, 2018 to March 18, 2019; and (2) Defendant Sayles's deposition testimony

---

[7] The question as to the amount of damages that Plaintiff Walker may recover will be resolved later.

that she laid off Plaintiff Goins. In the Reply, Plaintiff Goins argues that, even though she received unemployment benefits, she can also recover unpaid wages for the same time period.

As held in Section III.B.3.a, *supra*, even when construing the facts in Plaintiff Goins' favor, Ms. Ellis's declaration does not resolve the dispute of fact as to whether Defendant Sayles laid off Plaintiff Goins on September 30, 2018. A reasonable jury could find that Plaintiff Goins was laid off on September 30, 2018. Indeed, a reasonable jury could find persuasive the evidence before the Court that Plaintiff Goins received $6,732.00 in unemployment benefits from October 7, 2018 to March 18, 2019. (Plaintiff Goins's Unemployment Payments, J.A. 000252-54). Thus, summary judgment is inappropriate in favor of Plaintiff Goins for all of her claims. Accordingly, the Motion is **DENIED** with respect to Plaintiff Goins's claims, Counts I-III. [8]

## IV.   CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

A separate Order will follow.


Dated:  September 12, 2024

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge

---

[8] The question as to the amount of damages that Plaintiff Goins may recover, including whether an offset is required due to the unemployment compensation that she received, will be resolved later.